COAKER, et al. *v.* CHURCHWELL

No. 40202          December 3, 1956          90 So. 2d 849

*Ben Stevens* and *J. M. Byrd,* Hattiesburg; *L. Barrett Jones,* Jackson, for appellants.

*Ben H. Walley,* Leakesville, for appellee.

LEE, J.

This suit involved a controversy over the title to approximately 4.75 acres of land, and the right to recover the actual value and the statutory penalty for the alleged wrongful cutting of timber thereon.

W. H. and A. L. Coaker, brothers, filed their bill of complaint against Gabe Churchwell. They alleged that they are the owners of this small acreage by adverse possession. They undertook to deraign their title by showing that this and other land was patented by the United States to Henry Christmas and another on May 25, 1825; and through mesne conveyances, the title became vested in their father, William A. Coaker, on April 14, 1894; that their father, believing that this land was within the calls of his deed, shortly thereafter built a fence around it and claimed the same adversely against everyone until his death in 1947 or 1948; that through all of the intervening years, their father maintained the fence around, and possession of, the land, and acquired full title thereto by adverse possession; that they received from him a warranty deed on October 25, 1948, and have continued in such possession of the land. They charged that Churchwell went upon the land in the fall of 1954, cut the existing line fence, and wilfully cut and removed certain timber therefrom. The prayer of the bill was for confirmation of their title against Churchwell, for an injunction against him to prevent future trespasses, and for the recovery of the actual value of the

timber and the statutory penalty for the wrongful cutting.

Churchwell, in his answer, denied all of the material allegations of the bill. He denied that the patent to Christmas and another embraced the land in controversy, but averred that the same was included in a grant from the government to the Mobile and Ohio Railroad Company, and the title to which, through mesne conveyances, came to him by warranty deed of the date of April 1, 1932. He denied that the fence in question was the line, or that it had been recognized as such. He admitted that he cut some timber, but claimed that it was his timber and that he had the right to do so. He made his answer a cross bill, deraigned the title, claimed record title and title by adverse possession, and prayed that he should be declared the true owner.

The answer of the Coakers to the cross bill was a detailed denial of the allegations thereof.

The deed to the elder Coaker contained 308 acres, described as the West fractional Section 1; Lot No. 3 of fractional Section No. 1; Lot No. 8 of fractional Section 2; Lot No. 3, fractional Section 12; all in Township No. 3 North of Range 6 West.

The deed from the elder Coaker to the complainants described the land as: SW¼ of Section 1, west of river; SE¼ and W½ of NE¼ of Section 2; E½ of SW¼ and W½ of SE¼ of Section 10; Township 3 North, Range 6 West, that is west of Chickasawhay River.

The Churchwell deed included the NE¼ of NE¼ of Section 11; West fractional west of river of NW¼ of Section 12, in Township 3 North, Range 6 West.

M. V. B. Thames, County Surveyor of Forrest County, ran the section line between Sections 2 and 11, and 1 and 12. Commencing at the 1/2 section corner, he ran East 2257 feet to an old fence, and followed that fence in a southeasterly direction until he came to the river. He then went back to the point where he intersected the

fence, and ran east on the section line 621 feet until he came to the river again. This triangular piece of land, east of the old fence, south of the section line, west of the river, and containing approximately 4.75 acres, is the subject of the controversy. He described the fence as wire, nailed on lightwood posts. He saw some plank, and some of the posts were decayed. He also found evidence of a rail fence. It was his opinion that the present fence had been there a long time, probably 15 or 20 years. He counted 3 pine, 6 cypress, and 18 hardwood, trees which had been cut, and which he estimated to have aggregated 590, 2458, and 6449 feet, respectively.

A. L. Coaker, 60 years of age, testified in effect that the fence was already located when he knew anything. It has been there 45 to 50 years, and in its present location for over 20 years. This parcel of land has been enclosed with the other Coaker land to the north, under the same fence which runs up to Coaker Eddy Bluff on Chickasawhay River. His father had built a small house near the bluff about 35 years ago, which was used for about 20 years, but which is now rotted down. For several years, the father and sons cultivated about 1½ acres. He asked Churchwell not to cut the timber, but he proceeded to tear down the gate, went upon the land, and cut the timber, saying that it was his.

W. H. Coaker, 64 years of age, testified in effect that the land has been enclosed by this fence with the other Coaker land, approximately 247 acres, and has separated their land from what is now the Churchwell land for 45 to 50 years; that his father first built it of rails, then of plank, and finally of wire. In 1909 or 1910, because his father did not have sufficient wire, he pulled the fence in slightly to its present location. The witness aided in this construction. The fence, built by his father, had been accepted as the line over the years, and nobody ever questioned it. He also testified about farming 1½ acres from 1912 to 1920, the erection of the small house

near the bluff, that his father occupied, used and claimed the land up to his death, and that he and his brother had claimed it since.

James F. Turner testified that his father once owned the present Churchwell land and sold it in 1915. It was his recollection that the Coakers built the fence about 1909, and knew that it was there in 1912, when he logged the timber south of the fence. Hardy Mills, 60 years of age, had been familiar with the land for 45 years, and was of the opinion that the fence was the line. Earl Mills had known the land for 45 years; that the bluff was known as Coaker Eddy Bluff; that it was enclosed in the Coaker fence; and that the old house had rotted down.

At the close of the evidence for the complainants, the defendant moved for a dismissal of the original bill, and that the prayer of the cross bill should be granted because, he said, (1) the complainants had not proved that the title had been divested out of the United States, (2) the patent, under which they claimed, did not embrace the land in question, and (3) although the complainants say that they are joint owners, only one them testified that he did not consent to the cutting. The court announced that he was of the opinion that the complainants had failed to make out their case, and sustained the motion. A decree to that effect was entered and the complainants appealed.

■■ ■ Complainants undertook to prove that title was divested out of the United States by the patent under which they claimed. The deraignment by the defendant showed that the United States had been divested of title. Thus both parties alleged and contended that the title had passed out of the government. There was, therefore, no issue between the parties on that question. They differed as to which patent divested the government of title, but they did not differ as to the fact that the government had actually been divested of title. ■■ ■ The land was thus subject to a claim of adverse pos-

session. Cochran v. Cochran, 221 Miss. 780, 74 So. 2d 841.

A. L. Coaker protested against the cutting of the timber. It was not shown that W. H. Coaker had any conversation with Churchwell at the time, or that he in any way acquiesced in the cutting. On the contrary, he joined in the bill of complaint and manifestly showed his lack of consent when he sought to recover for the alleged wrong.

When the defendant made his motion to dismiss, the court should have assumed to be true all of the facts, which the evidence of the complainants fairly tended to establish, together with all of the reasonable inferences to be deduced therefrom. Partee v. Pepple, 197 Miss. 486, 20 So. 2d 73. If this had been done, the complainants at that time, would have been entitled to a decree. This being true, the court should have overruled the motion and heard the evidence, if any, of the defendant.

For the error in sustaining the motion, the cause is reversed and remanded for another trial.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Kyle* and *Holmes,* JJ., concur.