Koch *v.* H. & S. Development Company

No. 43007 May 4, 1964 163 So. 2d 710

*T. M. Davis, Jr.,* Hattiesburg; *Harry E. Koch,* Laurel; *Earl T. Thomas, Jack M. Brand, Wells, Thomas & Wells,* Jackson, for appellant and cross-appellee.

594

*Gray & Montague, Heidelberg, Sutherland & McKenzie,* Hattiesburg, for appellee and cross-appellant.

BRADY, TOM P., J.

This is an appeal by George Clinton Koch, appellant, complainant and cross defendant in the court below, from a final decree of the Chancery Court of Forrest County, Mississippi, dismissing with prejudice appellant's bill of complaint, cancelling and setting aside all claims of appellant under a certain lease contract, directing and enjoining appellant to remove himself and his property from said leased premises, thus sustaining the cross bill of appellee and directing the appellant to pay the appellee, H & S Development Company, the sum of $800 for damages for the alleged wrongful withholding of possession of said leased premises for a four months' period of time and $200 per month for any additional months in which appellee may be denied possession of such property. This appeal presents numerous questions which will be hereinafter discussed, but the

fundamental question is whether or not the real estate lease between the appellee landlord and the appellant tenant expired by its own limitations on December 31, 1961, or whether the appellant tenant under the express terms and conditions thereof properly exercised an option to renew the lease for an additional five year term beginning January 1, 1962, and also whether or not the appellant tenant should be relieved of the consequences of his failure to timely exercise the option. The appellant originally filed his bill of complaint seeking to compel the appellee to specifically perform the leased agreement by extending and renewing the same for an additional five year term. The appellant sought a decree adjudicating (1) that the lease had been renewed for an additional five year term, alleging that either notice to exercise the option to renew the lease was not required or, if required, that the appellant should be relieved of the consequences of his failure to give proper notice within ninety days of the termination date of said lease. It was the contention of the appellant in the lower court and here that the lease had been renewed and was extended for an additional five year term by the tender of the first month's rental for the new term, because it was not necessary for the appellant to give notice of its intention to renew the lease since the appellee, it is contended by appellant, failed to properly notify the appellant six months prior to the expiration date of its desire that notice of intention to renew be given by the appellant; (2) because the appellee waived its right to insist on such notice; and (3) because it would be unequitable under circumstances and cause undue hardship to appellant to cancel and terminate said lease.

The appellee in the court below filed an answer and cross bill charging that the lease contract was for a term of five years only, beginning January 1, 1957, and expiring December 31, 1961; that the appellant had not

exercised the option contained in the lease to renew the lease for another five years and consequently the lease expired by its own limitations on December 31, 1961.

The answer of appellee further denied that appellant was entitled to be relieved of the consequences of his failure to give notice to exercise the option and prayed that the chancery court cancel the lease of record, set aside and hold for nought all claims of the appellant with reference thereto and issue a mandatory injunction requiring appellant to vacate the premises and remove his property and pay damages to the appellee for wrongfully withholding possession of the property at the rate of $350 per month from and after January 1, 1962.

Appellant joined issue in his answer to the cross bill. Testimony was taken at the April, 1962 term of the chancery court and at the conclusion of appellant's testimony, appellee moved the court to dismiss the bill of complaint with prejudice and to grant the prayer of the cross bill. By agreement between appellant and the appellee, damages were stipulated to be at the rate of $200 per month while the appellee was held out of possession. These motions were sustained by the court and the chancellor then entered an order taking the cause under advisement for decision and the making and signing of all appropriate findings of fact, conclusions of law, final decree and all other appropriate orders in vacation.

On May 4, 1962, the court made and entered findings of fact and conclusions of law and a final decree dismissing the bill of complaint and granting the prayer of the cross bill was entered. An appeal, with supersedeas, was granted and perfected, bringing this cause before us.

As can well be anticipated, the facts in this cause are, while not complicated, quite extended. We will therefore endeavor to list only those facts which are

absolutely essential for the determination of the issues here presented.

Out of deference to counsel, and because of the thorough preparation, pleadings, trial and briefs, by both parties, it is in order to state that this case falls within that uncrowded category designated as excellent.

The record discloses the following facts. On April 19, 1946, appellant obtained a lease of the unexpired ninety-nine year term of sixteenth section land covering most of Block 95 of the McInnis Third Survey of the City of Hattiesburg. Two parcels of land were leased but we need to consider here only a 125 foot square parcel in the southeasterly corner of Block 95 at the intersection of West Scooba Street and 33rd Avenue, adjacent to Broadway Drive. This subsequent lease was obtained from Mr. T. P. Crymes, Sr. and his wife, and provided for the payment of rentals of $20 per month, and for options for unlimited five year renewals.

In 1956, after the death of Mr. and Mrs. Crymes, the Crymes heirs and devisees challenged the validity of said leases, claiming them to be invalid and unconscionable contracts because of inadequate rental and the indefinite and perpetual nature of the term under the unlimited renewal options. They threatened to institute suit to cancel the leases and actually employed Honorable R. A. Gray, Jr., Attorney, of Hattiesburg, to represent them. Appellant denied the invalidity of the leases and he employed Honorable T. W. Davis of Hattiesburg and Honorable Harry E. Koch of Laurel, who is appellant's brother, to represent him. After a year of negotiation between the attorneys of the appellant and the Crymes' heirs, two new lease contracts and agreements were entered into upon May 15, 1957, effective as of January 1, 1957, covering the 125 foot parcel. The two former lease contracts which had been in existence were cancelled and the second lease contract which was executed and effective as of January 1, 1957, was execut-

ed and is the lease contract involved in the case at bar. Under the original leases obtained from T. P. Crymes, and in order that the appellant might use the land as he desired, the appellant hauled several hundred loads of gravel which were placed upon the 125 foot parcel of land and appellant furthermore erected, as he had a right to do under the lease contract, a wood frame restaurant building which cost him $8,776.03. This occurred during the year 1947 and it was then that he opened the West Scooba Street back for a distance of 125 feet. Furthermore, he erected a dining room addition to this restaurant building during the year 1953, which cost him the sum of $2,501.01. Appellant made further additions to the building and improvements which cost him $2,748.57 after the new lease contract and agreement had been entered into as of January 1, 1957, so that the total sum spent by the appellant since 1946 on the buildings, filling in the lot, conditioning the parking lot, and other betterments, amounted to the grand total of $13,510.61. The bulk of the testimony offered by the appellant and his witnesses was given to show the loss which would be sustained by the appellant should the lease contract in question be cancelled. This additional testimony related to the money which was spent in the advertising of the business, including the location, and the expense and cost to which the appellant would be put if forced to move to another location his buildings and equipment which had been located on the premises. The proof shows that the net profit obtained by the appellant before income taxes on his restaurant business was $27,642.95 for the year 1959, $20,184.49 for 1960, and $25,430.33 for 1961. Appellant testified that improvements had been made on the property since January 1, 1962. Appellant estimated the good will of his business to be $73,240.17, which is the total of the three years' net profit shown above, and it was further asserted by appellant that to remove the buildings and

equipment to another location would cost him approximately $9,000.

The record discloses that the appellant was a well educated, intelligent business man. He had graduated from the Hattiesburg High School and had attended what is now the University of Southern Mississippi and Mississippi State University. He was a graduate from Soule Business College. The record discloses that subsequent to the discussions between counsel and the preparation of the new lease contract and agreement, he read the lease, signed it, and kept the recorded duplicate original in his home for several months where he could have the lease for reference, or reread after its execution. The record shows that he understood the contents of the lease and its basic requirements.

The appellee acquired control of the property from the Crymes heirs on May 7, 1958, and on June 13, 1958, the appellee wrote the appellant advising him of its purchase of the property and designating its agent to receive the rentals from the appellant. This letter was sent by ordinary mail. Subsequent thereto, on December 26, 1958, which was more than six months before the expiration date of the then operating five year rental period, the appellee wrote the appellant by registered mail, return receipt requested, reminding the appellant of his obligation to pay the taxes, advising the amount thereof, and that they could then be paid. In the second paragraph of this letter the appellant was notified, by written registered mail, of the fact that the expiration date of the then current term provided for in the lease expired on December 31, 1961. The third paragraph of the letter requested that when the taxes had been paid that duplicate tax receipts be furnished to appellee's attorneys to show payment. On October 12, 1961, the appellee wrote the appellant advising him that the lease contract would be terminated and ended on December 31, 1961, and that appellant would not be allowed to renew the same.

In order that the considerations given to the questions of fact and law presented by the pleadings and the testimony in this cause, it is necessary that certain portions of the lease contract of effective date of January 1, 1957, and the letter from the appellant to the appellee of December 26, 1958, be specifically presented. Those sections which require consideration are Sections 8, 10, 13, 14, 15 and 16 of the lease contract and agreement, which are as follows:

"8. For the same consideration herein recited, but subject to and in accordance with the terms and conditions hereinafter, in this Paragraph Eight, recited, Lessors do hereby give and grant unto Lessee the right, privilege and option to extend this lease Contract and Agreement and obtain successive renewals hereof as herein set forth. Lessors will, upon the written request and notice of Lessee made not less than ninety (90) days prior to the expiration date of the original or primary five year term hereby created, towit: December 31, 1961, or not less than ninety (90) days prior to the expiration date of any renewal term hereof for a maximum and aggregate of seven (7) such renewal terms, towit: December 31, 1966, 1971, 1976, 1981, 1986 and 1991, (so that this Lease Contract and Agreement and all renewals hereof, if exercised, will be for a gross term of forty (40) years and will fully and finally terminate by limitation on December 31, 1996) grant to Lessee additional separate successive terms of five (5) years each, commencing on January 1, 1962, 1967, 1972, 1977, 1982, 1987 and 1992, respectively, at a rental of $75.00 per month during each and all of such renewal terms, but otherwise under the same terms and conditions as herein provided. Provided, however, that the ninety (90) days' written notice by Lessee as herein required shall not be necessary to effect renewal for any new five (5) year term (payment of the first month's rental due under such term being sufficient to

effect such renewal) unless and until Lessors, or any one or more of them, shall have, not less than six (6) months prior to the commencement date of any such renewal term, notified Lessee, in writing, of the expiration date of the then current term. The option herein granted is further conditioned that, at the time of the exercise thereof for any renewal term, Lessee shall not then be in default in the payment of any rental herein reserved or otherwise in default in the performance of any of the covenants and obligations undertaken by or imposed upon Lessee hereunder.''

''10. That notwithstanding any provision of law or any judicial decision to the contrary, no notice shall be required to terminate the term of this Lease Contract and Agreement, or any renewal hereof, on the date herein specified, and the term of this Lease Contract and Agreement, or any renewal hereof, shall expire on the date mentioned herein without notice being required from either party; and further that, in the event that Lessee, or any assignee or sub-lessee, remains in possession of the demised premises after and beyond the expiration date of the term of this Lease Contract and Agreement, or any renewal hereof, it is the intention of the parties hereto, and it is hereby specifically understood and agreed, that a tenancy from month to month shall arise at the monthly rental herein stipulated.''

''13. All notices required to be given hereunder by either party hereto shall be in writing and given by United States registered mail, postage prepaid, correctly addressed to the party intended to be notified at the address of such party as herein stipulated last known to the party giving such notice; and notice so given shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any Post Office, or in any Post Office box regularly maintained by the United States Government.

"14. All of the terms, conditions, stipulations, covenants and agreements contained and set forth in this Lease Contract and Agreement, and all of the rights and privileges and duties and obligations of each of the parties hereto under the terms and provisions hereof, shall extend to and be fully binding upon the parties hereto and their respective successors, legal representatives and assigns.

"15. It is further understood and agreed by and between the parties hereto that, as to the premises herein demised, leased and let, this Lease Contract and Agreement supercedes, completely and in entirety, any and all prior Lease Contracts and Agreements at any time heretofore entered into by and between said parties, or either or any of them, and particularly, but without limitation, that certain Lease executed on April 19, 1946, as of April 1, 1946, by Mrs. F. M. Crymes and T. P. Crymes, as Lessors, to G. C. Koch (the Lessee herein), as Lessee; recorded in Forrest County Land Deed Book 90 at Pages 183-84; and further, that said prior Lease Contracts and Agreements are, each and all, fully and completely voided, cancelled, annulled and held for naught.

"16. It is recognized and distinctly understood and agreed that this Lease Contract and Agreement contains and embodies all and every agreement of the parties hereto, in entirety, and that no representation or agreement has been made by or between the parties hereto which is not herein expressed; and no demand or claim shall be made by and party hereto upon or against the other that is based on such alleged representation or agreement and that is not herein specifically recited."

The appellee wrote the appellant on December 26, 1958, the following letter:

"P. O. Box 687
Jackson, Mississippi
December 26, 1958

"REGISTERED MAIL, RETURN RECEIPT REQUESTED

"Mr. G. C. Koch
C/o Choctaw Drive-In Restaurant
Broadway Drive
Hattiesburg, Mississippi

Re: Lease Contract and Agreement of January 1, 1957 originally between Thomas P. Crymes, Jr., et al, Lessors, and George Clinton Koch, Lessee, now owned by H & S Developing Company, a Mississippi corporation, Lessor

"Dear Mr. Koch:

"You are hereby given written registered mail notice by the undersigned Lessor, H & S Development Company, through its proper officer, that, under the terms and provisions of said Lease Contract and Agreement, you are obligated to pay, annually, all ad valorem taxes assessed and levied against and upon the premises described in said Lease Contract and Agreement. These taxes are in the amount of $10.05 (county and state) and $140.00 (city), and may now be paid at the Tax Collectors' offices in the Courthouse and City Hall in Hattiesburg, Mississippi; and the same will be delinquent on and after February 2, 1959.

"Also, in pursuance of pertinent provisions of the captioned Lease Contract and Agreement, you are also hereby given written registered mail notice that the expiration date of the now current term provided by said Lease Contract and Agreement is December 31, 1961.

"With further reference to the ad valorem taxes mentioned above, it will be very much appreciated if you

will pay the same as soon as you can conveniently do so, and, at the time of payment, secure from the respective Tax Collectors duplicate tax receipts, and furnish these duplicate tax receipts to the office of the corporation's attorneys, Gray & Montague, Carter Building, Hattiesburg, Mississippi, as soon as possible so that the corporation may have a permanent record reflecting payment of these taxes.

"Trusting that you will promptly comply with the above, and with very best wishes, we are

Yours very truly,

H & S DEVELOPMENT COMPANY
By Jno. D. Stockton
Secretary''

The record further discloses that the appellee realized that the lease required the use of registered mail in order to communicate any notice permitted under the contract to be given between the appellant and the appellee. Subsequent to acquiring the Crymes property on May 7, 1958, and between that time and the time in which appellant had the right to extend the lease, the appellee wrote the appellant five letters, the letter of December 26, 1958, being the first letter; three letters were written subsequent thereto, all concerning taxes and all sent by ordinary mail. Finally the appellee wrote the appellant on October 12, 1961 by registered mail advising the appellant that the lease would expire on December 31, 1961 and requesting the appellant to vacate the premises prior to said expiration date. The only letter signed in the name of the corporation by a corporate officer rather than by a local attorney, and sent by registered mail, was the letter of December 26, 1958, advising that the expiration date of the current lease was December 31, 1961. It was signed H & S DEVELOPMENT COMPANY, By Jno. D. Stockton, Secretary, was mailed to the appellee at his Choctaw

Drive-In Restaurant by registered mail, return receipt requested. The record discloses after discrepancies in testimony had been corrected that this letter was received by Mrs. Koch, appellant's wife, who opened it, read it, and immediately took the letter to appellant at his home which was situated close by his restaurant. The record discloses that he read the letter and "thought that it was all about taxes", that he went and paid the taxes and mailed the receipts to the H & S Development Company, appellee, and "never thought any more about it". Appellant explains that he interpreted the second paragraph of the foregoing letter to mean that he was not only liable for the rent for the balance of the five year period, but that he was also liable for the taxes for such period and it was necessary for him to promptly attend to this matter and mail the receipts to the appellee. He vehemently testified that the letter did not alert him to the fact that the appellee was putting him on notice of the expiration date of the then current term of the lease which had three years and five days yet to run. He testified further that had the letter alerted him he would have "sit down right then and wrote them a letter", because he was soon leaving on a very dangerous and extended treasure hunting trip in Florida. The record discloses that the appellant frequently spent six or seven months at a time away from the restaurant in his treasure searches and explorations and that his wife efficiently managed their restaurant business. Appellant asserts that his wife knew nothing about the terms of the lease and that he received no other notice from the appellee that the lease would expire or that if he wanted to renew it he had better notify the appellee within the ninety day period of time. Appellant further testified that the letter of October 12, 1961, of the appellee, advising him that the lease would terminate on December 31, 1961, "was the greatest shock he had ever had in his life"; that he

went to the bank and secured his lease where he had stored it in his safety deposit box, that he read it and then consulted his attorneys, one of whom was his brother, Honorable Harry E. Koch, of Laurel, Mississippi, who wrote a letter for the appellee and in appellee's name on November 6, 1961, and again wrote a letter on November 15, 1961, advising the appellee that it had elected to renew the lease contract and agreement for an additional five year term, beginning January 1, 1962, enclosing a check in the second letter in the amount of $75 in payment of the January, 1962 rent and renewal for five years. This check was returned by the appellee and on January 2, 1962 appellant mailed another check which was likewise returned to the appellee. Appellant testified that he had intended all during the year 1961 and all years prior thereto under the new lease to renew the lease for an additional five year period of time and he paid to the chancery clerk the lease rental of $75 per month for the months of January, February, March and April, 1962.

The appellant did not give appellee written notice or any notice at all not less than ninety days prior to December 31, 1961, the date of the expiration of the lease, of the desire and intention to exercise the option to renew the lease for an additional five year period. He made no effort to exercise the option until thirty-five days after the last day for the giving of such notice and twenty days after he had received appellee's letter of October 12, 1961, advising him that he would be expected to vacate the premises at the expiration of the term ending December 31, 1961. The appellant offered evidence to show that there was no other suitable location available to him in Hattiesburg. The appellant offered proof as to the actual terms and conditions of the negotiations leading to the cancellation of the two old leases and the execution of the new lease contract and the mutual understanding and agreement which

appellant alleges was had between the parties thereto as to the notice to be given appellant by the lessors not less than six months before the expiration of the five year primary term thereof. This testimony was objected to by the appellee and the trial court sustained appellee's objection.

The attorney for the appellant dictated into the record a tender of proof on behalf of the appellant concerning the cancellation of the two old leases and agreements entered into leading up to the preparation and execution of the new lease contract, including the agreement concerning the notice to be given the appellant by lessors or appellee not less than six months prior to the expiration of the then current five year primary term thereof. Appellant charges that the appellee had made several written threats to file suit to remove appellant from the property when appellant refused to move. The appellant is still in possession of the property over the appellee's objection, and has been since January 1, 1962. By agreement of the parties to this lawsuit, it has been stipulated that damages for such wrongful possession, if recoverable, were to be allowed at the rate of $200 per month from and after January 1, 1962. The appellant in his bill of complaint charged that the letter of December 26, 1958, was cunningly, coyly and fraudulently devised by the appellee to deceive and defraud the appellant. The appellant did not endeavor to prove this nor is there any evidence to substantiate the charge to show that the appellee was guilty of any wrong doing. No actual fraud was charged nor was any actual fraud proven, which is conceded by the appellant and his attorneys as reflected in the record. The chancellor found as a fact that the appellant was not prevented nor induced not to give notice of the exercise of the option by any act of the lessor and found further that the appellee is not guilty of any fraud, deceit, cunningness or any other improper act as charged in appellant's bill of complaint.

The issues which were presented and decided in the chancery court and are now for review on appeal are variated, but they all are encompassed by and constitute intrinsic parts of the primary question, did the lease expire because of the appellant's failure to exercise his option to renew it? The errors assigned are four in number, which are: (1) In sustaining appellee's motion to exclude the evidence of appellant and in dismissing the bill of complaint; (2) in sustaining appellee's objections to the testimony tendered on behalf of the appellant; (3) in making its findings of facts, and entering its conclusions of law thereon; (4) in failing to give any weight to the testimony introduced on behalf of appellant, or in failing to give such testimony its probative value.

The solution of the primary question requires a careful review and determination of the four errors assigned. The merit of the errors assigned likewise depend upon numerous questions, the first of which is, "Was the notice of the expiration date of the current term of the lease as given in appellee's letter of December 26, 1958, to the appellant sufficient in fact and in law under the terms of the lease to compel appellant to give notice to the appellee of his intention to renew the lease contract as provided for in paragraph 8 thereof?" Appellant contends that the notice in appellee's registered letter of December 26th, 1958 was insufficient because (a) the notice contemplated and required of the appellee in paragraph 8 of the lease is sandwiched in paragraph 2 of the letter, between paragraph 1 of the letter, relating to appellant's obligation to pay annually all city, county and state ad valorem taxes which would be delinquent after February 2, 1959, and paragraph 3 of the letter, which requests appellant to pay the ad valorem taxes as soon as possible and furnish appellee's attorney duplicate tax receipts therefor; (b) the notice of the expiration date of the lease was given

thirty-six months prior to the actual expiration date; (c) the obvious meaning of the clause "not less than six months prior to the commencement date of any such renewal term", was that the appellee's notice be given the appellant "within a reasonable time of the six months period" prior to the expiration date of the existing five year term, which was December 31, 1961; (d) the letter embodied no reason why the notice of the expiration date was being given the appellant, and (e) therefore the appellant was not alerted to the purpose of such notice as he would have been if the notice had been given at a time reasonably contemplated by the parties when the lease was executed and which is implied therein; (f) appellee's letter was not designed to give appellant actual notice that appellee expected the appellant in turn to give him written notice, made not less than ninety days prior to the expiration date of the primary five year term, to-wit, December 31, 1961, appellant's failure to do so thereby permitting the appellee to cancel the lease; (g) language in paragraph 2 of appellee's letter is insufficient in fact and in law to impose duty upon the appellant to give the ninety day notice of renewal because it is ambiguous; (h) given at an unreasonably long period of time prior to the six months period; and (i) calculated to and did deceive and mislead appellant, causing him to believe that no notice of his intention to renew need be given the appellee.

We will consider each ground, and comment separately on every point, because of the importance of this first question urged by appellant why the notice given by the appellee is insufficient to require the "not less than 90 day" notice by appellant of his intention to renew the lease.

While we would like to do so, it is unfeasible to thus treat the numerous, minute, detailed, arguments made to the four remaining basic questions. We will of course

duly consider each and every contention made by both appellant and appellee together with the applicable authorities cited and urged, but we will restrict our comments to those issues which we consider of importance. To do otherwise would require a voluminous opinion of unwarranted length.

We now consider the first ground urged by the appellant that the notice in appellee's registered letter of December 26th, 1958, was insufficient to compel the appellant to give notice to the appellee of his intention to renew the lease as provided for in paragraph 8 thereof.

Mandatory notice by the appellant to the appellee of his intention to renew the lease is not absolute. It is dependent upon a notice by registered mail from the appellee to the appellant. The pertinent controlling language in the lease insofar as notice by the appellant and the appellee to each other is concerned is as follows:

"Lessors will, upon the written request and notice of Lessee, made not less than ninety (90) days prior to the expiration date of the original or primary five year term hereby created, to-wit: December 31, 1961, or not less than ninety (90) days prior to the expiration date of any renewal term hereof, for a maximum and aggregate of seven (7) such renewal terms, to-wit: December 31, 1966, 1971, 1976, 1981, 1986 and 1991, * * * grant to Lessee additional separate successive terms of five (5) years each, commencing on January 1, 1962, 1967, 1972, 1977, 1982, 1987 and 1992, respectively, at a rental of $75.00 per month during each and all of such renewal terms, * * *. Provided, however, that the ninety (90) days' written notice by Lessee as herein required shall not be necessary to effect renewal for any new five (5) year term * * * unless and until Lessors, or any one or more of them, shall have, not less than six (6) months prior to the commencement date of any such renewal term, notified Lessee, in writing,

of the expiration date of the then current term * * *. * * * ''

It is obvious therefore that no notice was required of the appellant unless the appellee notified the appellant by registered mail of the expiration date of the then current term. It is to be noted that all that is required of the appellee is that in not less than six months prior to the commencement date of any renewal term, the appellee must notify the appellant of the expiration date of the then current term. There is nothing required of the appellee except to notify the appellant of the expiration date. There is no other requirement of the appellee to alert the appellant of the expiration date or to put him on guard or to make him aware that upon such a date the lease would expire. The mandatory provisions in paragraph 8 do not require that the notice be given ''within'' the six month period of time immediately preceding the expiration of the lease. There is no implication with reference to any ''reasonable length of time before the lease expires'' that is required for the giving of the notice. If the appellant had desired that the appellee give him in his notice these facts which appellant now urges are implied or were ''in the minds'' of the lessor and the lessee at the time of the execution of the lease, then the lessee, appellant, should have stipulated and written into the lease, these requirements clear and distinct in order that the appellee would have to comply and afford the appellant all of these additional safeguards and precautions which appellant now urges, but which are not called for in this lease.

The appellant complains strenuously that the language and position of paragraph (2) of the letter is deceptive and insufficient notice under the lease requirements, which paragraph reads as follows:

''Also, in pursuance of pertinent provisions of the captioned Lease Contract and Agreement, you are also

hereby given written registered mail notice that the expiration date of the now current term provided by said Lease Contract and Agreement is December 31, 1961.''

Appellant contends that since this notice was sandwiched in between the first and third paragraphs of the letter, this location of the paragraph vitiates the effect of the notice because it is in between two paragraphs, one of which deals with ad valorem taxes which are due, and the other with receipts which should be obtained and mailed to appellee after the taxes have been paid by the appellant. We do not feel that this contention is meritorious. The allegations in paragraph (1) were obviously correct and in order, and the request in paragraph (3) is likewise not out of order. The commenting on the taxes due and the proof of the payment thereof in paragraphs (1) and (3) are not deceptive and it cannot be logically argued that because the letter began in that manner, that paragraph (2) is disguised because thereof. Insofar as the notice of the expiration date of the lease being given thirty-six months prior to the actual expiration date is concerned, either the lessor or the lessee could have, upon the execution of this contract, notified each other by registered mail of the expiration date of the then beginning five year lease. Insofar as the appellee is concerned, this is true, and the appellant, immediately upon receiving the notice, could have notified the appellee by written, registered letter of his intention to renew the lease upon the expiration date of the then current lease. This could have been done by appellant the day the lease was executed, irrespective of whether the appellee gave registered notice of the expiration date or not, and appellant would have been certain of renewing the lease. The obvious meaning of the clause ''not less than six months prior to the commencement date of any such renewal term'' is that before the last six months of the then existing lease began to expire, the appellee

must, before that time, notify the appellant of the expiration date in order to require the appellant to give this notice of renewal not less than ninety days before the expiration date of the lease. To interpret the lease now so as to permit the appellee to give notice of only a few days, a few weeks, a few months before the operation or running of the six months period immediately prior to the beginning of a new lease is to write into this lease a requirement which is not in the face or body thereof and which was evidently not contemplated by the parties. It restricts the appellee to a limited time of performance of that which is not so limited in the lease and cannot by reasonable implication logically be held to be there.

Appellant urges that there is no reason embodied in the notice with reference to the expiration date which was given to the appellant. The lease does not require the appellee to state any reason nor does the lease require the appellee to alert the appellant other than to notify him that his lease would expire upon the 31st day of December, 1961. The terms of the lease do not require the appellee's letter to give the appellant actual notice that the appellee expects the appellant in turn to give him written, registered notice not less than ninety days prior to the expiration date of the primary five year lease that the appellant desired to renew the same. Such contentions by appellant are unjustified enlargements of the duties of the appellee and are without merit.

We furthermore fail to see any ambiguity in the language of the letter or any ambiguity in the terms and conditions of paragraph 8 and paragraph 10 of the primary lease. Since the only prerequisite insofar as time is concerned with reference to the giving of the notice by the appellee to the appellant is that it be given six months prior to the expiration date of the termination of that lease, and we cannot arbitrarily hold that it was given an unreasonably long time prior to the six

months period immediately preceding the expiration of the lease. The last and perhaps the most serious contention of the appellant, insofar as the insufficiency of the notice of the appellee is concerned, is that it was calculated to and did deceive and mislead the appellant, causing him to believe that no notice of his intention to renew need be given the appellee. This is subsequently urged as a reason equity should grant relief against forfeiture. We cannot find any objective proof in the record which indicates that this notice was deliberately constructed and given so as to deceive and mislead the appellant. The language of paragraph (2) of said letter is not evasive, disingenuous, or superfluous. It is separated and set apart from the balance of the letter. The grounds of deception urged by the appellant in his brief and as testified to at the time of the trial are almost entirely subjective. This Court nor any other court can rely solely upon the subjective interpretation or belief held by one litigant as the basis for reaching an opinion, particularly when this interpolation is largely the reason upon which the court is urged to act. We must rely upon objective proof based upon the lease as written and a reasonable interpretation thereof. The appellant testified that he read the letter and that he *thought* it was all about taxes; that when he paid the taxes and mailed the receipts to the appellee, *he never thought any more about it*. Again he stated that *he interpreted* the second paragraph to mean that he was not only liable for the rent for the balance of the five year period, but that he was also liable for the taxes for such period. It is obvious from the letter that this interpretation and his thought about the letter being all about taxes, and that he never thought anything more about it are not reasonable thoughts and logical interpretations and do not justify our holding because thereof that the notice was insufficient. He stated further that the letter *did not alert him,* that the

putting him on notice of the expiration date of the then current lease which was some three years and five days in the future *failed to alert him,* but that if the letter had so alerted him he would have "sit down right then and wrote them a letter." We fail to find any obligation in the lease requiring the appellee to alert so specifically the appellant, or to prevent the appellant from giving the notice at the time the notice was given. The argument by the appellant that he received *no other notice* from the appellee cannot be earnestly urged as a ground of insufficient notice since no other notice is required under the lease. The assertion that the letter was calculated to and did deceive and mislead the appellant is another subjective symptom which only the appellee could testify to or dispute, and which the letter itself, when construed as a whole and together with the lease, does not justify us in accepting.

 █ The appellant testified that he had read the contract, that he understood it and that he signed it. He testified further that he knew that all important notices under said lease had to be given by written registered mail; that this was the only way in which notices could be given. This paragraph (2) expressly states "in pursuance of pertinent provisions of the captioned Lease Contract and Agreement, you are also hereby given written registered mail notice." These words, *"written registered mail notice"* certainly should have alerted the appellant as to the importance of what was embodied therein. Likewise, the words, "Also, *in pursuance of pertinent provisions of the captioned Lease",* should have informed and alerted the appellant as to the importance of what was to follow, and then, when the notice went further and stated that the expiration date of the now current term provided by said lease contract and agreement is December 31, 1961, the appellant as a reasonable man should have then realized fully that he then had the burden, the responsibility, the duty, to

immediately notify, not less than ninety days before the expiration date of the lease, that he intended to renew the same, if he desired to do so. (Emphasis ours). He could have given, on the day he received the registered letter, the written registered notice of his renewal of the lease. While it would have been more than, it certainly could not have been less than, ninety days before the expiration date. In retrospect, the appellant now seeks by his subjective reflections and asseverations to show that the notice was insufficient to comply with the terms and conditions of paragraph 8 of the lease, while the crux of the matter appears to be that after he paid the taxes, as he stated, he "never thought any more about it" and the appellant has only himself to blame for his wilful ignorance or gross neglect. It was sheer forgetfulness on the part of the appellant to give the necessary notice. He had ample opportunity and ability to read the notice and construe it. If there was any doubt in his mind, he had recourse to his attorneys and he could have turned the letter over to them. He could have required them to assist him, or to give the notice for him immediately, or at some later date not less than ninety days before the expiration date of the lease. The day he received the notice by registered mail his lawyers could have notified appellee by registered mail of his renewal of the lease. He has only himself to blame for his forgetfulness. When the notice was given by the appellee to the appellant, the notice by the appellant to the appellee became a condition precedent to appellant's right to renew. 44 A. L. R. 2d 1359. Once the appellee had given the prerequisite notice to the appellant of the expiration date of the lease, it became obligatory on the appellant to exercise his option and to notify the appellee of his desire to do so. Burge v. Purser, 141 Miss. 163, 106 So. 770; Scott-Burr Stores Corp. v. Wilcox, 194 F. 2d 989, Dikeman v. Sunday Creek Coal Co., 184 Ill. 546, 56 N. E. 864;

51 C. J. S. 607, Landlord and Tenant, Sec. 62; 32 Am. Jur. 820, Landlord and Tenant, Secs. 977, 978; Anno., 51 A. L. R. 2d 1404-1427. In Pieck v. Carran, 271 Ky. 32, 111 S. W. 2d 440, we find a situation which is somewhat comparable to the facts in the case at bar. In the Pieck case the lease contained an option to renew for an additional three year period of time and contained the following provision regarding the notices:

" * * * In the event this lease is renewed the lessee shall give written notice at least six months before the expiration of the first three year term, but the right to renew shall not be forfeited until 15 days after the lessee shall be notified in writing that such election must be made."

Lessee in the Pieck case did not notify the lessor in writing of such intention to renew until fifteen days after the lessor's notice, and less than six months before the expiration of the first term. The Kentucky Court held, and we think properly so, that the lessee had lost his right to renew because of his failure to exercise the right of renewal in writing as required by the lease. The court further said:

"* * * It is to be noted that the lease plainly provided that in the event it is renewed the lessee shall give written notice at least 6 months before the expiration of the first 3-year term, with the proviso that the right to renew it shall not be forfeited until 15 days after the lessee shall be notified in writing that such election must be made. But that does not mean that the appellant, in any event, waived written notice of the intention of the appellee to renew the lease. Upon receipt of such notice by appellee it then became his duty to notify the appellant in writing of his intention to renew the lease. It follows that appellee failed to comply with the terms of the lease and thereby forfeited same and has no right to maintain this action."

The appellee in the case at bar gave the appellant due notice of the expiration date of the then current term in the manner literally and specifically required in the lease and it then became the duty of the appellant to notify the appellee in writing by registered mail not less than ninety days before the expiration date of the term of his election to renew the lease. When the appellee failed to do so, he lost the right to renew the lease and it expired by its own limitations on December 31, 1961.

Appellant, in support of the nine assertions (a) through (i) why the notice of the appellee was insufficient in fact and law, cites Jones v. Dexter, 48 Wash. 2d 224, 292 Pac. 2d 369, 51 A. L. R. 2d 1399, and Van Praag v. National Cash Register Co., 342 Ill. App. 715, 97 N. E. 2d 580, Anno., 51 A. L. R. 2d 1404; Spillman v. Interstate Public Service Co., 216 Ind. 343, 24 N. E. 2d 693; 32 Am. Jur., Landlord and Tenant, Sec. 979, p. 821; 66 C. J. S. Notice, Sec. 16, pp. 653-654. A review of the facts and circumstances in the above styled cases clearly distinguish them from those in the case at bar. In the Jones case, supra, the claim of renewal is based upon an oral statement made by one Armstrong, one of the lessees. The statement is digressive and extraneous to the main discussion which was taking place between the lessors and lessees. By no logical inference could the lessors hardly be said to be put on notice that the lessees were intending at that time to give notice of the exercise of an option.

The abstract rule of law announced in the Jones case, supra, is not in question. It is the clear difference in the facts which prevents that rule from being of any material benefit here to the appellant. The appellees here literally complied with the written requirements of paragraph 8 of the lease in giving the prerequisite notice which followed verbatim the lease requirement language and is definite, unequivocal and unqualified.

In the Van Praag case, supra, no time was specified when the irrevocable option must be accepted. After the lease had expired, and nearly three years thereafter, the offer to extend the lease was accepted and that court properly held that an irrevocable offer or option to enter into a lease terminates after the lapse of an unreasonable length of time in the absence of express provisions to the contrary contained in the offer. The option in the case at bar was not irrevocable. It was expressly limited by compliance with a certain condition precedent, agreed to by all concerned. This case is clearly distinguishable from the case at bar.

In the Spillman case, supra, it is not the fact that there still remained five years under the existing lease when the purported acceptance of renewal was made which makes the notice unclear as to the intention of the lessee to renew the lease for another five year period, but that the lessee expressly said that after the present five year lease expired they will construe the offer, to make the lease a ten year lease, a continuation for five more years. The language here is vague, uncertain, cloudy, quivocal and indefinite. The lessor could not have compelled the lessee to rent for an additional five year period, and therefore the lessee should not be permitted to force the lessor to lease the premises to him for said period of time.

██ ██ Insofar as Point 2, Waiver of Notice by the Appellee, is concerned, since the concluding sentence of the appellee's letter of December 26, 1958 can logically refer only to the payment of taxes, which would be delinquent in a little over a month, and the delivery of duplicate receipts evidencing the payment thereof, it can scarcely be logically urged that this is likewise a waiver of the responsibility of the appellant to give notice of his renewal of the lease. There is no substantial basis for the inference that the appellee thought the appellant had renewed the lease for another five year

period and was obligated to pay the rentals thereon and therefore. notice in not less than ninety days by the appellant was unnecessary. We certainly do not agree that the last portion of the letter, which concludes, "Trusting that you will promptly comply with the above", negates any obligation on the part of the appellant to notify the appellee of his intention to renew. Therefore, we are forced to reject this contention of appellant.

Appellant relies predominately, as his forte, upon his forte, upon his powerfully urged claim (No. 3) of existing circumstances under which equity will relieve against a forfeiture of the lease, and effect a renewal thereof even though appellant gave delayed notice.

██ ██ Appellant apparently does not contest the general rule that where an option to renew is expressly conditioned upon a request therefor or notice thereof, it is generally held, in the absence of equitable considerations, that such notice must be given, or the right of renewal cannot be enforced. Burge v. Purser, 141 Miss. 163, 106 So. 770; 51 C. J. S. Landlord and Tenant, Sec. 62 c. p. 609. He urges that there are two exceptions when the renewal clause of a lease need not be strictly complied with to prevent a forfeiture, namely, (I) *Waiver,* which has already been considered here, and (II) where the lessee is entitled to and can obtain relief from his failure to give the notice required by the renewal provisions, (1) where by reason of compelling circumstances the failure to give notice results *not from lessee's own ignorance or negligence,* but (2) from *accident, fraud, surprise, or mistake;* (3) and the *forfeiture will result in a real hardship* to lessee, (4) *but will do little or no harm to* the *lessor.* 32 Am. Jur., Landlord and Tenant, Sec. 981.

The appellant, in order to be entitled to equity's protection, must fall within the positive and negative provisions of one or more of the above four exceptions. At

the outset there is no specific formula or prescription whereby the rights of lessor and lessee can be scientifically determined. The facts, circumstances and relationship of the parties in the particular case must be evaluated in order to decide this frequently confounding question.

■■■ Where the failure to give the prerequisite notice was due to negligence or wilful ignorance, it is a well settled rule that equity will not grant relief. Assuming that the appellant was not guilty of gross or wilful neglect in his failure to give timely notice of his intention to renew the lease as provided therein, let us now determine if the protection and benefits of the remaining three provisions are available to the appellant.

■■■ Therefore we consider the proposition of accident, fraud, surprise or mistake. The appellant concedes that there is no actual fraud charged, but that there is present deceit, in that the letter was misleading and calculated to and did deceive the appellant into believing it related solely to taxes. The appellant is an educated man, who had the assistance of a brother, who is an attorney, and of another very able attorney, and as we have already found the notice not to be deceptive, we now fail to find merit in his subjective conclusion that he was deceived. A business man with equal education and business experience would not have been so deceived by the latter, regardless of what the appellant may claim, and therefore we hold there was no deceit or misleading of which equity should take notice. The record moreover is silent insofar as accident, surprise or mistake are concerned, and these elements are of no avail to the appellant here. The rules laid down in the following cases pertaining to accident, mistake, forgetfulness, inadvertence and oversight and other equitable relief cases clearly have no application under the facts to the case at bar. Monihon v. Wakelin, 6 Ariz. 225,

56 Pac. 735, 27 A. L. R. 987; American Houses, Inc. v. Schneider, 211 Fed. 2d 881 (3rd Circuit 1954); Dugan v. Haige, 54 So. 2d 201 (Fla.); Dikeman v. Sunday Creek Coal Co., supra; Doepfner v. Bowers, 55 Misc. Rep. 561; 106 N. Y. Supp. 932; 27 A. L. R. 989; 51 C. J. S. Landlord and Tenant, Sec. 67, P. 615; 32 Am. Jur. 824 Landlord and Tenant, Sec. 981.

The appellant cites F. B. Fountain Co. v. Stein, 97 Conn. 619, 118 Atl. 47 (1922) as a leading and informative case as to the criteria a court will use in determining whether equitable relief should be granted. In the Fountain case, supra, the Connecticut court held that the delay in giving the notice at least thirty days before the beginning of any renewal period was not unreasonable, that it caused no damage to the defendant, that the delay was due to inadvertence or negligence, not gross or wilful, and that a forfeiture would entail great loss to it by reason of the improvements placed by it on the premises. The court pointed out that the mere fact that the delay may have been slight, and that no damage would be incurred by the defendant, standing alone, could not furnish a basic for equitable interposition, but were merely considerations of relevancy for such inquiry. The rule set forth in this case denies equitable relief only where there was gross or wilful neglect. The court further held that the at least thirty day notice before the beginning of any new five year renewal period was a condition precedent, and that no right of renewal could vest in the plaintiff until such terms had been complied with, and that such notice had not been given. The court then proceeded to state that the plaintiff had no right to relief unless it could establish a *waiver,* or such facts as would bring it within the power of equity to relieve against forfeiture.

The Connecticut court, in the Fountain case, supra, then proceeded to grant equitable relief on the judicial determination that the negligence was not gross or wilful

but was merely inadvertence or "mere" negligence, holding that the delay was not unreasonable, caused no damage to the defendant (lessor), and that a forfeiture would entail great loss to the lessee.

It appears that April 1st, 1911 was the last day upon which the thirty day notice could be given. It was given on April 4th after the lessee had been notified to quit the premises. It is not clear in the report what criteria the court used in evaluating the lessee's negligence to be merely inadvertence, nor is the great loss to the lessee shown, if forfeiture is permitted. The court indulges in a great deal of dicta and insofar as the state of Connecticut is concerned it extends the doctrine of equitable relief against failure to give notice of lease renewal to cover neglect, provided it is not gross or wilful, and provided the delay is slight in fulfilling a condition precedent, where the lessor's loss is small and where such hardship would result to the lessee as to make it unconscionable.

The court in the Fountain case ordered a new trial because of the trial court's failure to admit evidence tending to show the equity of lessee's claim or the hardship of enforcing the lessor's claim.

 █ Moving first from the specific to the general, the lessee here proved he would be forced to spend the sum of $9,000 to remove his buildings from the lot. He put the building on the lot in 1946 and subsequently added thereto so that he has approximately $13,510.03 invested in the buildings and lot. These were material considerations and in the original and subsequent leases appellant agreed to those conditions. He reserved the right of removal of his improvements. From 1946 to 1956 he paid $20 per month rent or $240 per year. Such fantastically low rent is explained only by the fact that the lessee was to bear the expense of filling in the lot and constructing such buildings as he felt were needed for his restaurant business, reserving the removal right

thereof. All rentals paid by him during this ten year period amounted to only $2,400.

Appellant estimates he will lose his good will at the site, and values it at $73,240.17. The amount is determined by adding his net profits for the years 1959, 1960, and 1961. We fail to understand why he restricts himself to only the last three years since he has been serving the public for over sixteen years at the same location, or why his good will did not begin when he began his business. The good will figure is conjectural, and too many other variables are operating to permit it to be considered conclusive.

Appellant asserts he cannot find another location in the city of Hattiesburg which will enable him to continue successful operations, as in the past. This unproved conclusion is difficult to accept.

We do not feel that the cost of $9,000 for the removal of the buildings constitutes a real hardship on the appellant. When he had the first yard of gravel placed on the lot, when he built his first building thereon, he knew or should have known that he did not and could not own the lot, that the gravel would remain on the lot and that he would have to remove his buildings when his lease expired, or was not renewed, if he wanted to keep them. He actually knew this because he stipulated in the contract that he would have the right to remove the improvements.

When considering equities it is to be noted that the $13,510.61 which he invested in the buildings, together with his $20 per month rent for the first ten years and his $50 per month rent for the remaining six years of the lease represents an unusually low investment or expenditure when taking into consideration that during the three years from 1959 through 1961 he realized a net profit of $73,240.17. During the entire life of the lease his expenditures for the buildings and rent constituted only $18,910.61 which is less than one-third of

his net profits for only the last three years. If there is a real hardship in the case it appears it rests upon the appellee for the reason it has been paid an extremely low rental for this valuable rental property. But, both parties executed a contract with their eyes open. Both lived by the contract and both should abide by it.

It is worthy of notice that, by agreement of the parties, the damage incurred by the appellee was fixed at $200 per month while the appellee is deprived of possession pending the outcome of this cause. This can be considered persuasive that the appellant's rentals have been unreasonably low during the term of the lease.

Appellant cites additional authorities, among which is American Houses, Inc. v. Schneider, 211 Fed. 2d 881 (3rd Circuit 1954), as authority for equitable relief were slight or excusable tardiness in giving notice of renewal will be overlooked. In the American Houses case the court held that (a) the expiration date of the lease, i. e., one year after the termination of the *present national emergency,* was a subject of dispute and therefore was not definite or easily determinable, and (b) in real hardship cases equity allows a renewal despite relatively inconsequential and excusable tardiness, (c) the lessee, if denied the renewal of the lease, would have suffered the loss of a quarter of a million dollars, and (d) position of the lessor was not changed, and (e) the agreed rent of $19,890 per year was not shown to be inconsiderably low or failed to provide the lessor appellant a fair rent on the value of the property. This case is distinguishable from the case at bar in that the time is not uncertain in the case at bar nor can it be safely said that a real hardship will result to the appellant because of a termination of the lease. Furthermore, the rent paid to the lessor was $19,890 per year, which was also found to be a fair rent, while it can scarsely be urged that the rent paid by the appellant in the case at bar falls within the same category.

In Dugan v. Haige, 54 So. 2d 201, cited by the appellant, the Florida court held that the lessor had not been harmed by the lessee's delay of eighteen days in giving the requisite notice of renewal, but this case is distinguishable from the case at bar for the principal reason that the lessors in the Dugan case had actual notice of the lessee's intention to extend the lease.

In Jones v. Gianferante, 305 N. Y. 135, 111 N. E. 2d 419, where lessor claimed that the privilege to renew expired on September 1st, on September 6th landlord, lessor, notified tenant, lessee, that he wanted possession on November 1st, the expiration date of the original term. On September 13th the lessee, tenant, served the landlord, lessor, with notice that he was renewing the lease for a further period of ten years. The court held in this case that the failure to notify the lessor or landlord at the proper time was the result of an honest mistake and that the landlord or lessor suffered no damage by the brief delay, and to evict the lessee or tenant would cause much hardship because of his investment in the business.

We can not hold that the rule of law in the Jones case, supra, should be applied in the case at bar for several reasons. First, in the Jones case the lessee had become the tenant by an assignment of a lease which was made by the lessor's predecessor in title on October 20, 1941. There was language in that lease as follows:

"The term of this lease shall be for ten years commencing October 1, 1941 and ending October 1, 1951. Second party is to have the option at the expiration of this lease to renew said lease in the following manner: The option is extended for an additional period of ten years and is to be exercised immediately thereafter if the party of the second part so desires to continue the lease, by giving a written notice to the party of the first part on or before the first day of September of each succeeding year."

The lessee in the Jones case had only one year left of the original lease. The report of the case fails completely to disclose the hardship which the court says would be "much" to the tenant because of his investment in the business if he was evicted. It can be reasonably assumed, however, that the tenant had expended, as is customary, sums of money in purchasing bowling equipment, sandwich making and restaurant equipment, lockers, bowling accessories and other customary paraphernalia and equipment. The court furthermore held in the Jones case that the requirements of the renewal clause were ambiguous, and the case is therefore distinguishable from the case at bar to this extent.

There is another side to the coin called equity which perhaps is not as appealing as the lessee's, but nevertheless it still commands careful consideration. The owner, the landlord, the lessor, the person who has lawfully acquired, constructed and has title, possession and control over the property is also entitled to consideration, and his rights deserve equal respect under our laws and our right of private ownership of property.

██ ██ While the appellee is not the owner of the property involved, he stands in the shoes of the owner and what equity does to a lessor, equity may also do to an owner. The owner or lessor of property, when he contracts with a buyer or a lessee, should be able to rely upon the simple, mutually accepted terms of the contract, as should the buyer and lessee. The terms of the contract when fulfilled or breached should decide if possible the rights of the parties. The rule of caveat emptor, as yet, is still operative. Provided it is not illegal or against public policy, persons have and should have the right to contract with reference to their property, their interests therein, and the use thereof with other persons, and to rely upon the terms and conditions of the contract mutually agreed upon. Parties thus contracting shall not be required to anticipate or guess

how a panacean court of equity may "feel" a valid contract should be construed or enforced, because one of the contracting parties may breach the simple conditions precedent, agreed to by both parties before the contract can be renewed. The written words of the contract afford greater certainty of intention, and more accurate compliance with and performance of the terms of the contracts by the parties thereto than do the retrospective, impassive conclusions of a court of equity. A court of equity should not be the first, but the last resort. It is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, unconscionable results, and the other grounds of righteousness, justice and morality. We do not find any of these grounds sufficiently present for appellant's relief.

■■·■ The rule is well recognized that equity will not relieve against a forfeiture in case of default of performance due to inadvertence, neglect, or ignorance to which lessor in no way contributed. Where the lessee has been guilty of gross or wilful neglect in failing to fulfil a condition precedent to the right of renewal, equity will not grant relief. The same is true where the default in performance has been due to wilful ignorance and within this rule ignorance is considered wilful when the person neglects the means of information which ordinary prudence would suggest. ■■ ■■ Equity will not relieve against mere forgetfulness and will not intervene where there is no fraud, accident or mistake on account of which the lessee neglected to avail himself of the option. 51 C. J. S., Landlord and Tenant, Sec. 67, p. 615; 32 Am. Jur., Landlord and Tenant, Sec. 981, p. 824; Monihon v. Wakelin, supra; Dugan v. Haige, supra; Dikeman v. Sunday Creek Coal Co., supra, I. X. L. Furniture & C. Installment House v. Berets, 32 Utah

454, 91 Pac. 279; Keppler Bros. Co. v. Heinrichsdorf, 26 Ohio C. C. 16, 27 A. L. R. 984; Doepfner v. Bowers, supra; Jones v. Dexter, supra; Braun v. MacLaughlin Co., 93 Cal. App. 116, 269 Pac. 191.

It is urged by appellant (Point No. 4) that the chancellor erred in not admitting evidence to show the circumstances, understandings, negotiations, and intentions of the parties surrounding the execution of the 1957 lease to explain alleged ambiguity therein, and to show various equitable considerations existing in favor of the appellant.

There are several reasons why the chancellor did not err in excluding this evidence, or in entering findings of fact and conclusions of law (Point No. 5) after excluding appellant's evidence and dismissing the bill of complaint at the close of the appellant's case.

██ ██ With reference to Point No. 4, the admitting of this evidence for the enumerated purposes would have been in violation of the statute of frauds. Furthermore we have already pointed out that there is no ambiguity in paragraphs 8 and 10 of the lease or in any of the other material parts thereof. If the claim of the appellant that he should be permitted to introduce parole evidence, under the facts at bar, to vary the contract by explaining what he felt was meant is allowed, then any written contract under similar or comparable conditions can be varied or changed by parole testimony. No contract would be safe from change and pandemonium would reign in the business world. To have permitted the appellant to introduce this parole evidence would have been tantamount to striking from the lease agreement Section 16, which expressly prohibits the doing of exactly what the appellant desires to do and substituting therefor the assertions of the appellant. To do this is just as certain the rewriting of the contract as if it had been interlined by the court. Therefore the chancellor was correct in excluding this evidence.

██ ██ Insofar as Point No. 5 is concerned we feel it is a little unusual in that attorneys generally request a finding of fact and a conclusion of law from the chancellor at the conclusion of a case. The chancellor took the case under advisement and although there was no request for findings of fact and conclusions of law, the chancellor nevertheless, after excluding the appellant's evidence and dismissing the bill, filed his findings of fact and conclusions of law. First, the findings of fact are not essential in the determination of the rights of the parties in this case. We are not bound by these findings, and we must determine for ourselves the proper conclusions of law. We have the record before us which we have fully considered together with the pertinent rules of law and equity. Possibly, the chancellor entered his findings of fact and conclusions of law as explanation of the decision which he reached for the benefit of this court. ██ ██ At any rate, we do not think that this act, if it be error, and we do not adjudicate that it is, is prejudicial to the rights of the appellant. The soundness or unsoundness of the rule in Parte v. Pepple, 197 Miss. 486, 20 So. 2d 73, or Skrmetta v. Moore, 202 Miss. 585, 30 So. 2d 53, or the application of the rule as announced in Coaker v. Churchwell, 229 Miss. 369, 90 So. 2d 849, and Meek v. Farmers' Cooperative (A.A.L.), 216 Miss. 140, 61 So. 2d 778, do not vary the basic factual and legal determinations which we have determined irrespective of the chancellor's conclusions. At any rate, we decline to restrict and limit the chancellor in this discretion, which is ordinarily desired and requested by the parties to a suit, and while not essential to the determination of the merits of this suit, where the evidence was excluded and the bill dismissed, it was not a determining factor in our decision and did not constitute prejudicial error to the rights of the appellant.

The contract neither guarantees a prepetual lease, nor does the valuable interest of the appellant require

it. The right to renew and extend the lease is set forth in the conditions precedent therein. Equity is not an "Open Sesame" for someone who has failed to perform the conditional precedent obligations of a contract which he has made.

The extended, lenient rule found to be "better" by the court of the State of Connecticut does not particularly appeal to us as being desirable. We feel that the better reasoned authority can be found in the Scott-Burr Stores Corp. v. Wilcox, supra; Dikeman v. Sunday Creek Coal Co., supra; Braun v. MacLaughlin Co., supra; and Jones v. Dexter, supra; together with the other authorities cited herein.

No court has the munificent right, though exercised earnestly, to cancel and hold for naught the solemn contractual responsibilities of the parties to a contract, simply because a failure to comply with the terms thereof, or a breach by one of the parties of an agreed prerequisite, results in substantial loss or damage to the person violating the contract, unless there is ambiguity which requires it or unless laches, estoppel, or some other equitable factor permits a reinterpretation or modification of it. Farmers Mutual Insurance Assn. v. Martin, 226 Miss. 515, 84 So. 2d 688; Griffin v. Maryland Casualty Co., 213 Miss. 624, 57 So. 2d 486. We find no error in the chancellor's decree.

For the above stated reasons, the decree of the Chancery Court of Forrest County is affirmed.

Affirmed.

*Lee, C. J., and Ethridge, Rodgers, and Patterson, J. J.,* concur.