MYERS, P.J.,
for the Court.
¶ 1. Cynthia Makamson (Cindy) filed for modification of alimony twelve years after a final decree was entered, claiming a change of circumstances against Walter R. Makamson (Reece). The Chancery Court of Leflore County granted an increase from $1,700 to $2,700 per month in alimony. This increase was based on Cindy’s extensive medical costs following a kidney transplant. The trial court determined Reece’s ability to pay the increased alimony based on his increase in net worth. From this ruling Reece appeals raising two issues and Cindy’s motion for this Court to award attorney’s fees on appeal.
I. WHETHER ALIMONY MAY BE INCREASED WHEN THE ALLEGED CHANGE IN CIRCUMSTANCE WAS ANTICIPATED, FORESEEN, AND DEALT WITH IN THE ORIGINAL PROPERTY SETTLEMENT AND ALIMONY PROVISIONS OF THE FINAL JUDGMENT OF DIVORCE.
II. WHETHER AN ALIMONY PAY-OR’S INCREASE IN NET WORTH AS OPPOSED TO DISPOSABLE INCOME IS THE PROPER BASIS TO JUSTIFY AN INCREASE IN ALIMONY.
III. CINDY’S MOTION FOR ATTORNEY’S FEES ON APPEAL.
FACTS
¶ 2. Cindy and Reece Makamson were divorced in 1989 on the grounds of irreconcilable differences. They had four children born during their marriage. At the time of this modification three children were emancipated and the fourth was ruled emancipated by the trial court. They agreed to a property settlement which was incorporated into and approved by the court in the final decree of divorce. The agreement provided that Cindy would receive alimony in the amount of $1,200 per month with an increase of $250 per month upon the emancipation of their second and fourth child. This increase would escalate the alimony from $1,200 to $1,450 and finally to $1,700 per month. Additionally, Reece paid $650 per child per month for child support to Cindy and $20,000 per year for fifteen years as property settlement.
¶ 3. Five years prior to the divorce Cindy was diagnosed with a renal problem that would lead to kidney dialysis and ultimately a kidney transplant. In 1993, four years after the divorce, Cindy received a kidney transplant. While recovering from the transplant, Cindy suffered a stroke and was in a coma for twenty-four hours. Since the transplant, Cindy has had to spend in excess of $1,000 per month in medicine to keep from rejecting the kidney and to treat other medical conditions. Her total monthly expenses were $3,320.
¶ 4. At the time of the divorce Cindy had an insurance policy with Blue Cross & Blue Shield that provided her with a $50,000 lifetime benefit that had been exhausted the first year after the divorce. Cindy now has a policy with Blue Cross & Blue Shield that costs $332 per month with a $3,000 deductible for doctors and hospitals and $500 deductible for medicine. Cindy testified that she had been able to cover her expenses using the child support and property settlement payments she had received from Reece.
¶ 5. From the time of the divorce until the modification hearing, Reece’s net *220 worth had increased from $1.6 million to $5.7 million. This increase was the basis the trial court used to determine that Reece had adequate disposable income to pay the $1,000 per month increase in alimony.
STANDARD OF REVIEW
¶ 6. Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule. Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990). “This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). In other words, “[o]n appeal [we are] required to respect the findings of fact made by-'a chancellor supported by credible evidence and not manifestly wrong.” Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990).
LEGAL ANALYSIS
I. WHETHER ALIMONY MAY BE INCREASED WHEN THE ALLEGED CHANGE IN CIRCUMSTANCE WAS ANTICIPATED, FORESEEN, AND DEALT WITHIN THE ORIGINAL PROPERTY SETTLEMENT AND ALIMONY PROVISIONS OF THE FINAL JUDGMENT OF DIVORCE.
¶ 7. Cindy filed her complaint for modification of alimony arguing that her health condition and increased medical costs had created a material change in circumstance that was not anticipated in the property settlement agreement. Reece argues .that Cindy’s health condition had been addressed and that the increased costs had been anticipated, foreseen and dealt with in the original judgment as demonstrated by the escalating alimony upon the emancipation of the second and fourth child. We- do not agree.
¶ 8. Our supreme court has held that absent fraud or overreaching, a chancellor should take a dim view of efforts to modify improvidently agreed-upon divorce judgments. Ivison v. Ivison, 762 So.2d 329, 334(¶ 14) (Miss.2000). However, Ivi-son noted that agreed divorce judgments are still modifiable in the event of a change in circumstances not foreseen at the time of the agreement. Id. at 334(¶ 11). In order for a chancellor to find a substantial change in circumstances, there must have been some change which resulted from “after-arising circumstances of the parties not reasonably anticipated at the time of the agreement” ‘ and furthermore the change must “be one that could not have been anticipated by the parties at the time of the original decree.” Id. See also Steiner v. Steiner, 788 So.2d 771 (Miss.2001); Varner v. Varner, 666 So.2d 493, 497 (Miss.1995); Tingle v. Tingle, 573 So.2d 1389, 1391 (Miss.1990); Bell v. Bell, 572 So.2d 841 (Miss.1990).
¶ 9. The case of Profilet v. Profilet, 826 So.2d 91 (Miss.2002), addressed a very similar set of facts as the ones in the case sub judice. In Profilet the supreme court remanded an increase in alimony due to the lower court’s failure to make a finding on whether a sufficient change in circumstance had occurred to support an increase in alimony, whether a change in circumstance could have been anticipated, and whether the increase was based on erroneous calculations and other facts. Profilet was remanded so the chancellor could make specific findings as to the foreseeability of the effects of a medical condition at the time of final judgment on divorce. Id. at 96 (¶ 16).
¶ 10. In the case before this Court we do not see a need to remand. The chancellor made specific findings on the record *221 that supported his increase in the amount of alimony. The chancellor made following findings:
And it is quite clear in this case that the parties had no earthly idea how much it was going to cost for No. 1, her to be on dialysis and cost of her health insurance and cost in her ability to make income, nor was it anticipated how much the medicine would cost, not only in specifics but I don’t think anyone in 1989 had any idea of the general explosion in costs of medical expense, both medical expense and drugs, nor the explosion of medical — of medicines that are available to treat conditions.
Certainly, there was no anticipation about strokes or depression or any of the problems that Mrs. Makamson has experienced because of her condition, and there just would be no possible way that the parties could have anticipated how much it costs to have a kidney condition that requires dialysis and then subsequently, thankfully requires and allows the patient to have a transplant. And there certainly is no evidence in this case that the parties made any attempt to ascertain that information, even the present information they would have had in '89.
There was no evidence presented that at the time of this agreement the parties would have even known how long it would be before Mrs. Makamson would have to be on dialysis, how long it would be before she could get or would have to need a kidney. No evidence was presented as to whether the parties in the present state of the evidence could say they knew any sort of time table in that. So a lot of that simply was not available.
These are specific findings that the increased costs, length of time before treatment was to begin and the stroke were not anticipated in the property settlement agreement.
¶ 11. When the property settlement agreement is reviewed, there is no mention of Cindy’s health condition nor an agreement addressing her future medical needs. The escalation clause does not contain any mention of it being for the additional costs associated with Cindy’s health.
¶ 12. We find that there was no anticipation of and no means by which Cindy’s health care needs could have been anticipated. Therefore, we find no error in the chancellor’s decision to increase Reece’s alimony payments from $1,700 to $2,700 per month.
II. WHETHER AN ALIMONY’S PAY-OR’S INCREASE IN NET WORTH AS OPPOSED TO DISPOSABLE INCOME IS THE PROPER BASIS TO JUSTIFY AN INCREASE IN ALIMONY.
¶ 13. As his second issue on appeal, Reece argues that the trial court erred in basing his ability to pay increased alimony on his net worth. From the time of the original divorce in 1989 until the case sub jtidice in 2005, Reece’s net worth had increased from $1.5 million to $5.7 million dollars. Reece contends that his net worth has increased over this time but his disposable income has not. Reece argues that the chancellor only considered his increase in net worth and did not consider all the Armstrong factors in the alimony increase. We do not agree.
¶ 14. When a chancellor makes a determination in awarding alimony or granting an increase, as in this case, he is to base his decision on the factors that are set out in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). In his opinion the chancellor does not specifically address each of the factors, but does state “the Court will review the Armstrong factors *222 again to determine what, if any, additional income of alimony Ms. Makamson should have....” In examining these factors, the chancellor may consider them as an “overall combination” and need not individually list each one. Hoggatt v. Hoggatt, 766 So.2d 9,12(¶ 9) (Miss.Ct.App.2000).
¶ 15. The chancellor addresses Cindy’s ability to work, her health condition and her expenses, both health and personal in his opinion. Reece’s expenses, income, net worth and ability to pay are also noted by the court. The chancellor addressed Reece’s ability to pay child support, alimony, insurance for the children and the fifteen year installments of the property settlement agreement, while increasing his net worth at the same time.
¶ 16. We find that the trial court properly evaluated the Armstrong factors in making a determination to increase Cindy’s alimony payments from $1,700 per month to $2,700 per month. Finding no error, we affirm.
III. CINDY’S MOTION FOR ATTORNEY’S FEES ON APPEAL.
¶ 17. Cindy requests that this Court order Reece to pay her attorney’s fees on this appeal. We agree.
¶ 18. This Court has generally awarded attorney’s fees on appeal in the amount of one-half of what was awarded in the lower court. Monroe v. Monroe, 745 So.2d 249, 253(¶ 17) (Miss.1999). Attorney’s fees are based upon necessity rather than entitlement. Id.
¶ 19. The lower court found that Cindy was unable to pay her attorney’s fees because of her limited resources and awarded her attorney’s fees in the amount of $2,000. We grant Cindy’s motion for attorney’s fees on appeal in the amount of $1,000.
¶ 20. THE JUDGMENT OF THE LE-FLORE COUNTY CHANCERY COURT IS AFFIRMED. THE APPELLEE IS AWARDED ATTORNEY FEES IN THE AMOUNT OF $1,000 ON APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR.