966 So.2d 192 (2007)
June H. McMURPHY, Appellant
v.
THREE RIVERS PLANNING AND DEVELOPMENT DISTRICT, INC., Appellee.
No. 2005-CA-02106-COA.
Court of Appeals of Mississippi.
March 20, 2007.
Rehearing Denied July 17, 2007.
*193 John S. Hill, Tupelo, attorney for appellant.
Sidra Patterson Winter, Phillip L. Tutor, attorneys for appellee.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. This contractual interpretation case arose from a corporation's decision to finance the purchase of a retail business. The corporation, MM & K, Inc., did not have sufficient collateral to finance the purchase, so Three Rivers Planning and Development District, Inc., one of the two financing entities, demanded additional collateral from the principal owners. June McMurphy, the mother-in-law of Harley Boone, one of MM & K's principal owners, intended to aid her son-in-law in his collateral obligation. McMurphy executed a document and assigned 1,552 shares of stock to Three Rivers as Boone's portion of the additional collateral obligation.
¶ 2. Eventually, MM & K defaulted on its obligation to Three Rivers. Three Rivers intended to liquidate McMurphy's stock. Three Rivers interpreted the assignment as a pledge of the stock, including any appreciation in value that accrued subsequent to McMurphy's pledge. McMurphy disagreed. She did not interpret the assignment as inclusive of any appreciation in value. Rather, she interpreted the assignment as a pledge of a specific value of the stock as of the date of the assignment. Unable to resolve their differences, the matter went before the Pontotoc County Chancery Court.
¶ 3. The chancery court agreed with Three Rivers' interpretation of the assignment. That is, the chancellor interpreted the assignment as a pledge of the stock itself, including any appreciation in value subsequent to the execution date, rather than a pledge of a specific value of the stock, less any appreciation in value. McMurphy appeals and claims the chancellor erred in her interpretation. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY
¶ 4. Harley Boone and Dennis Pate were the principal owners of a corporation called MM & K, Inc. MM & K sought to purchase Trace Farm Supply, a retail business located in Tupelo, Mississippi. MM & K lacked the capital to purchase Trace Farm Supply outright. To that end, MM & K sought to borrow money from The Peoples Bank and Three Rivers Planning and Development District, Inc.
¶ 5. During July of 1997, The Peoples Bank loaned MM & K $300,000 and Three Rivers loaned it $200,000. However, Three Rivers took a second priority security position to any collateral that would stem from Trace Farm Supply. Because Three Rivers felt under-collateralized, Three Rivers demanded additional collateral from Boone and Pate, individually. Boone's mother-in-law, June McMurphy, *194 helped Boone with his obligation. McMurphy executed a document titled "Assignment of Shares of Stock." Specifically, McMurphy pledged 1,552 shares of Deposit Guaranty National Bank (DGNB) stock. This case focuses on the contractual language of that document. In particular, the issue is whether McMurphy pledged a particular limited dollar amount or whether she pledged the stock itself, including any appreciation in value subsequent to execution of the document.
¶ 6. In any event, during September of 1998, Boone bought out Pate and became the sole owner of MM & K. However, Boone was required to replace Pate's $100,000 collateral pledge. To accomplish that, McMurphy allowed Boone to present her $100,000 certificate of deposit to People's Bank. Boone then sent his mother-in-law's $50,000 certificate of deposit to Three Rivers, which already had McMurphy's $50,000 DGNB stock assignment.
¶ 7. The record does not indicate exactly when, but at some point after Boone bought out Pate, MM & K defaulted on its loans. Three Rivers sought to liquidate McMurphy's stock, which appreciated in value subsequent to the assignment. Three Rivers claimed that the assignment granted them a security interest in the stock regardless of the value. Though the stock was valued at slightly less than $50,000 at the time McMurphy executed the assignment, Three Rivers sought to liquidate whatever amount necessary over and above $50,000 necessary to satisfy the deficiency.
¶ 8. McMurphy claimed that the assignment was for no more than $50,000. Accordingly, McMurphy refused to sign over her stock. McMurphy claimed that the assignment only granted Three Rivers a security interest in the stock up to a $50,000 limit.
¶ 9. On July 26, 2004, Three Rivers filed a complaint against McMurphy for mandatory injunction to transfer the shares of stock. McMurphy filed an answer and a counterclaim. Within those pleadings, McMurphy argued that the assignment was ambiguous and that any ambiguity should be resolved against Three Rivers. By her counterclaim, McMurphy submitted that Three Rivers apply $50,000 worth of stock to Boone's delinquency and deliver any amount over and above $50,000 to her.
¶ 10. On September 28, 2005, the Pontotoc County Chancery Court conducted a hearing on Three Rivers' complaint and McMurphy's countercomplaint. The parties did not submit any testimony during that hearing. Instead, the transcript reflects that counsel for each party argued in chambers, though counsel agreed that the argument would not be on the record. However, the parties submitted several exhibits; in particular, they submitted (a) McMurphy's first assignment of stock, (b) McMurphy's second assignment of stock, (c) the deposition of Suzanne Smith, Boone's ex-wife and McMurphy's daughter, (d) the deposition of Reed Hillen, the attorney who represented Boone and Pate incident to their purchase of Trace Farm Supply, (e) June McMurphy's deposition, (f) the deposition of Randy Kelley, the executive director of Three Rivers, (g) the deposition of Mitchell Montgomery, the division director of Three Rivers' loan division, and (h) Harley Boone's deposition.
¶ 11. On October 18, 2005, the chancellor rendered judgment on the matter. The chancellor found that, according to the plain language of her stock assignment, McMurphy assigned a certain number of shares, but not a certain dollar value of shares. That is, the chancellor found that McMurphy did not assign a $50,000 maximum of value in the shares. Rather, the chancellor found that McMurphy assigned *195 1,552 shares as a whole, including any appreciated value over and above $50,000. Aggrieved, McMurphy appeals.

STANDARD OF REVIEW
¶ 12. Questions concerning construction of contracts are questions of law. Parkerson v. Smith, 817 So.2d 529(¶ 7) (Miss.2002). We review questions of law pursuant to a de novo standard. Ellison v. Meek, 820 So.2d 730(¶ 11) (Miss.2002).

ANALYSIS
I. DID THE ASSIGNMENT PLEDGE A NUMBER OF SHARES OR A PARTICULAR DOLLAR VALUE FOR THOSE SHARES?
¶ 13. The sole issue on appeal is whether the language of the assignment granted Three Rivers a security interest in the stock itself, including any appreciation in value that accrued subsequent to the assignment. McMurphy contends that she never intended to pledge more than $50,000. According to McMurphy, Boone had to come up with $100,000 to secure his portion of the July 1997 loan from Three Rivers. McMurphy submits that her assignment covered one half of Boone's obligation. The relevant document titled "Assignment of Shares of Stock" stated:
FOR VALUE RECEIVED I/we hereby assign to Three Rivers Planning and Development District, Inc., a Mississippi non-profit corporation, 1552 shares of Deposit Guaranty National Bank Stock, held at Three Rivers Planning and Development District, Inc., in the amount of Forty nine thousand six hundred and sixty four ($49,664.00) Dollars, as collateral for a loan to MM & K, Inc.
This assignment shall be a continuing one and shall be effective for any renewals of above loan until same is entirely paid, and shall operate as security for payment of any other debts or liabilities of the undersigned to you now in existence or hereafter contracted.
Three Rivers Planning and Development District, Inc. is hereby authorized to use the proceeds of the above to pay any note or notes representing the unpaid balance of the above loan or loans at maturity or thereafter, with interest and costs, if not otherwise paid.
/s/June H. McMurphy
¶ 14. It seems that McMurphy's 1,552 shares appreciated to 3,395 shares, though the means of that appreciation is not among the record. Nevertheless, we are called upon to interpret the language from that July of 1997 assignment document.
¶ 15. "The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107(¶ 6) (Miss.2005). As with any contract interpretation case, we follow a three-tiered approach. Id. at (¶ 7). First, we apply the "four corners" test. Id. That is, we look to the language the parties used in expressing their agreement. Id. We read the contract as a whole, so that we give effect to all of its clauses. Id.
¶ 16. The pertinent language of the assignment is not complicated or convoluted. The assignment specifically stated that McMurphy "assign[ed] to Three Rivers . . . 1552[sic] shares of Deposit Guaranty National Bank Stock . . . in the amount of Forty nine thousand six hundred and sixty four ($49,664.00) Dollars, as collateral for a loan to MM & K, Inc." A fair reading of that language indicates that McMurphy assigned 1,552 shares of DGNB stock to Three Rivers. While the assignment specifies the value of the shares as of the *196 execution of the assignment, no language within the assignment operates to limit the value of the assignment to the value as of that time.
¶ 17. Additionally, the assignment states that "Three Rivers . . . is hereby authorized to use the proceeds of the above [the 1,552 shares of DGNB stock] to pay any note or notes representing the unpaid balance of the above loan or loans at maturity or thereafter, with interest and costs, if not otherwise paid." (emphasis added). That language does not limit the value of the shares at $50,000. To the contrary, this language indicates that Three Rivers may use the proceeds of the DGNB stock to off set any unpaid portion of the loan Three Rivers advanced to MM & K. Nothing in the agreement reads to limit of those proceeds at a $50,000 cap.
¶ 18. McMurphy has continuously stated that she did not intend to advance more than $50,000 as collateral. That may very well be, but we cannot discern that intent from the agreement that she signed. In interpreting the assignment agreement, we are not as concerned with what McMurphy and Three Rivers may have intended as we are with what they said. Facilities, Inc., 908 So.2d at (¶ 6). The reasoning behind this set of priorities is that the words employed in the agreement are the best resource for ascertaining intent and assigning meaning with fairness and accuracy. Id. Accordingly, we are not at liberty to infer intent contrary to that which emanates from the agreement. Id. Because nothing in the language of the assignment limits the value of McMurphy's DGNB stock to a $50,000 value, we do not find that the chancellor erred. As such, we affirm.
¶ 19. THE JUDGMENT OF THE PONTOTOC COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., CHANDLER AND GRIFFIS, JJ., CONCUR. LEE, P.J., DISSENTS WITH SEPARATE OPINION, JOINED BY KING, C.J., IRVING AND ISHEE, JJ. BARNES AND CARLTON, JJ., NOT PARTICIPATING.
LEE, P.J., Dissenting:
¶ 20. With respect to the majority, I must dissent. The majority affirms the chancellor's order that "Three Rivers may liquidate sufficient shares of stock to satisfy the outstanding indebtedness, with any surplus to be returned to McMurphy." After reviewing the language of the assignment and the facts, I find that McMurphy's intent was to pledge $50,000 collateral, with the stock as security, and nothing more.
¶ 21. In looking at the assignment of stock, the majority finds that the "pertinent language is not complicated or convoluted" and thus relies on the four corners of the assignment to determine the parties' intent. It is apparent to me that the contract language is ambiguous, and, therefore, we cannot rely on the four corners rule to determine intent. Tupelo Redevelopment Agency v. Abernathy, 913 So.2d 278, 283(¶ 12) (Miss.2005). In the event that a contract is ambiguous, the subsequent interpretation presents a question of fact for the trier of fact. Id. This Court is not at liberty to infer intent contrary to that emanating from the text at issue. Id. at 284(¶ 12).
¶ 22. According to the language of the assignment, McMurphy assigned 1,552 shares of DGNB stock, but the assignment also stated that the amount of the stock assigned was $49,664. The assignment is not dated. It is unclear exactly what McMurphy meant to pledge. She could *197 have intended to pledge 1,552 shares of DGNB stock or the exact amount of $49,664 which was mentioned in the assignment. Further, the assignment is silent as to what would happen if there were a stock split, if the bank changed names, or if the stock value dramatically increased, as happened in this case. "Where a contract is silent as to one of its terms, the court is not bound to adopt a construction which is not compelled by the instrument and which no man in his right mind would have agreed to." Id. at 284(¶ 14). It is not reasonable to believe that McMurphy would have agreed to pledge all her DGNB stock no matter how much the stock increased in value. It is also not reasonable to believe that she would have pledged stock valued at approximately $49,664 as potential security for the entire amount of a $200,000 loan.
¶ 23. Having found that the contract is ambiguous, the next step is to look at parol or extrinsic evidence to determine the parties' intent. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 353 (Miss.1990). When the $200,000 loan was taken out, Three Rivers required $100,000 in collateral to secure the indebtedness. Boone pledged a $50,000 certificate of deposit owned by Imogene Boone. To make up the remaining $50,000, McMurphy pledged $50,000 worth of stock. Further, the assignment does not even state for what McMurphy was putting up collateral. The agreement simply states that the assignment was "collateral for a loan to MM & K, Inc."
¶ 24. According to the canons of statutory construction, since the assignment of stock was prepared by Three Rivers, any ambiguity must be construed against Three Rivers. Id. at 352-53. To allow Three Rivers to recover up to the amount of the outstanding balance of the loan from McMurphy's stock would be unjust enrichment. Three Rivers, the drafter of the assignment, is using ambiguities in the assignment to take advantage of Ms. McMurphy. It is clear to me that Three Rivers did not intend to receive the assignment of stock as total satisfaction of the outstanding balance in case of a default. If it was Three Rivers's true intent to take the shares in full satisfaction of the indebtedness, then it would have to take the stock as is, regardless of the value at the time of default. It is unlikely that Three Rivers would have been pleased with this result if the stock had dramatically decreased in value. It would be hard to imagine Three Rivers not demanding the deficiency from McMurphy to make up for the $50,000 payment. Under the majority's interpretation of the contract, Three Rivers can "have its cake and eat it too."
¶ 25. Having determined the contract to be ambiguous, I find that the parties' clear intent shown from extrinsic evidence at the time the assignment of stock was drafted was that McMurphy would be liable for $50,000, nothing more and nothing less. I would reverse and render holding McMurphy liable for the indebtedness up to $50,000.
KING, C.J., IRVING AND ISHEE, JJ., JOIN THIS OPINION.