LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. On July 29, 2010, Jacques T. Martin Jr. (Martin) filed a complaint against Gregory L. Williams (Williams) in the Jackson County Chancery Court seeking a declaratory judgment for enforcement of an option contract to purchase real estate and damages for Williams’s alleged breach of a loan agreement.[1] Williams filed an answer and counterclaim. In his counterclaim, Williams alleged Martin had breached the option contract and was responsible for Williams’s attorney’s fees. Williams later added Martin’s brother, Michael T. Martin (Michael), as a defendant.
¶ 2. After a hearing on the matter, the chancellor determined that Martin had failed to make a timely option-renewal payment, resulting in the expiration of the option period, and Williams was not required to accept the late payment. The chancellor also awarded Williams $13,959.49 in attorney’s fees.
¶ 3. Martin now appeals, asserting the following issues: (1) the chancellor erred in determining the renewal date of the thirty-day option period; (2) the chancellor erred in finding Williams did not waive any rights under the option contract by accepting a prior payment one day late; and (3) the chancellor erred in finding no compel *785 ling circumstances to warrant equitable relief. In his cross-appeal, Williams asserts that the chancellor should have assessed attorney’s fees against Michael in addition to Martin. Williams also asks this Court to award attorney’s fees in connection with the appeal.
FACTS
¶ 4. On February 4, 2010, Williams and Martin entered into an option contract to purchase real estate. The property in question was approximately eighty acres of land located in Gautier, Mississippi. The property was originally owned by Martin and had been in his family for thirty-five years.[2] According to the terms of the option contract, Martin had the option to purchase the property from Williams for an initial option period of ninety days, commencing on January 21, 2010, and ending April 21, 2010. Martin paid the initial option payment of $30,000. On the same day the option contract was entered, Martin assigned the option to Michael; however, this assignment was never delivered to Michael or recorded.
¶ 5. The option contract provided for the extension of the option “for twelve (12) additional, separate thirty (30) day periods ... if, and only if, the Optionee pays the [additional [o]ption [m]oney to Optionor prior to 5 p.m. on the date of expiration of the preceding option period.” Under the agreement, $10,275 was due to Williams for each additional thirty-day option period. Pursuant to the option contract, Martin tendered $10,275 to Williams on April 13, 2010, to extend the initial option period for an additional thirty days past the expiration date of April 21, 2010. On May 21, 2010, Martin paid Williams $10,275 in order to exercise his second renewal option.
¶ 6. On June 21, 2010, Martin paid Williams $10,275 in order to exercise his third renewal option. The previous option period had ended on June 20, 2010, but Williams accepted payment on June 21 since his office had been closed on June 20, which was a Sunday. On July 21, 2010, Michael attempted to pay $10,275 to exercise a fourth renewal option. However, Williams refused to accept payment, as it was one day late. Shortly thereafter Martin filed suit against Williams.
STANDARD OF REVIEW
¶ 7. The Court will not disturb a chancellor’s findings if they are supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002). The principle of “manifest error” applies only to findings of fact. Boggs v. Eaton, 379 So.2d 520, 522 (Miss.1980). However, questions of law, including questions of contract construction, are reviewed de novo. McMurphy v. Three Rivers Planning & Dev. Dist., Inc., 966 So.2d 192, 195 (¶ 12) (Miss.Ct.App.2007).
DISCUSSION
I. RENEWAL DATE OF THIRTY-DAY OPTION PERIOD
¶ 8. In his first issue, Martin argues the chancellor erred in finding the third option renewal period commenced on June 20. Martin contends he purchased *786 an additional thirty days beginning on June 21, which was the date of his late payment, and ending at 5:00 p.m. on July 21. If so, Martin’s payment on July 21 would have been considered timely.
¶ 9. According to our rules of contract interpretation, “where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract.” Turner v. Terry, 799 So.2d 25, 32 (¶ 16) (Miss.2001). If the terms of the contract are clear and unambiguous, parol evidence is inadmissible. HeartSouth, PLLC v. Boyd, 865 So.2d 1095, 1107 (¶ 36) (Miss.2008).
¶ 10. • The courts use a three-step approach to interpret a contract:
First, the “four corners” test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Second, if the court is unable to translate a clear understanding of the parties’ intent, the court should apply the discretionary “canons” of contract construction. Finally, if the contract continues to evade clarity as to the parties’ intent, the court should consider extrinsic or parol evidence. It is only when the review of a contract reaches this point that prior negotiations, agreements^] and conversations might be considered in determining the parties’ intentions in the construction of the contract.
Tupelo Redevelopment Agency v. Abernathy, 913 So.2d 278, 284 (¶ 13) (Miss.2005) (internal citations omitted).
¶ 11. The contract clearly states the following in regard to extending the option:
This option shall be for a period of ninety (90) days, beginning on January 21, 2010, and ending on April 21, 2010[,] at 5:00 p.m. C.S.T. (the “Initial Option Period), and this option may be extended for twelve (12) additional, separate thirty (30) day periods (the “Additional Option Periods”) if, and only if, [Martin] pays the [additional [o]ption [m]oney to [Williams] prior to 5:00 p.m. on the date of the expiration of the preceding option period.
This contract does not, as Martin' would have us believe, provide for a new option period to begin whenever payment was attempted, offered, or accepted. Otherwise a new option period would have begun on April 13 when Martin paid $10,275 to exercise his first renewal option. Martin admittedly knew the payment made on July 21 was due July 20, and admitted that an early payment did not change when the option period started or ended. In fact, Martin testified that he “did not notice that” the contract called for twelve separate thirty-day periods. We find this issue to be without merit.
II. WAIVER
¶ 12. In his next issue, Martin contends Williams waived the “time is of the essence” provision in the option contract by accepting the late payment on June 21. The chancellor found that Williams did not waive any rights under the option contract by accepting the payment on June 21 rather than June 20 because his office was closed on June 20. To waive a right, the waiving party must have “full knowledge of a right existing,” and there must be “an intentional surrender or relinquishment of that right.” Taranto Amusement Co. v. Mitchell Assocs., 820 So.2d 726, 729 (¶ 13) (Miss.Ct.App.2002). “To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived.” Id. at 730 (¶ 13) (citation omitted).
*787 ¶ 13. There is no evidence that Williams intentionally waived his right to insist on timely payments. Furthermore, Martin does not claim Williams made any statements to him or Michael regarding any future payments or any change to the renewal periods. We cannot find, as Martin suggests, that Williams’s silence after accepting the late payment on June 20 gave Martin the impression that timely payments would not be required in regard to future payments. The chancellor determined that Williams did not waive the right to proper renewal for the fourth option period by accepting payment for the third option one day late. We agree and find this issue to be without merit.
III. EQUITABLE RELIEF
¶ 14. In his final issue on appeal, Martin argues the chancellor erred in denying him equitable relief. Martin con-, tends that his mistake' in making a late payment is a compelling circumstance to warrant equitable relief.
¶ 15. In certain situations, compelling circumstances may give rise to a claim for relief. See Koch v. H & S Dev. Co., 249 Miss. 590, 622, 168 So.2d 710, 724 (1964). However, if the situation involves a party’s own ignorance or negligence, then the trial court must not find a compelling circumstance to warrant equitable relief. Id. Martin thought the option payments were due by the twenty-first of each month, but later admitted this assumption was incorrect. In this instance, Martin failed to read closely the contract that he signed. We cannot find any error on the part of the chancellor in declining to award Martin any equitable relief under the circumstances.
IV. WILLIAMS’S CROSS-APPEAL
¶ 16. In his cross-appeal, Williams contends the chancellor erred in ordering only Martin to pay his attorney’s fees. Williams argues that the attorney’s fees should have been assessed to Michael as well, since Martin assigned his option to Michael. However, Williams raises this issue for the first time on appeal. It is well settled that this Court does not review matters on appeal that were not first raised in the trial court. Daniels v. Bains, 967 So.2d 77, 81 (¶ 13) (Miss.Ct.App.2007). This issue is procedurally barred.
¶ 17. Williams also asks this Court to award him attorney’s fees on appeal. Attorney’s fees on appeal are generally awarded “in the amount of one-half of what was awarded in the[trial] court.” Scurlock v. Purser, 985 So.2d 362, 365 (¶ 9) (Miss.Ct.App.2008) (quoting Makamson v. Makamson, 928 So.2d 218, 222 (¶ 18) (Miss.Ct.App.2006)). “But ultimately, the decision whether to award attorney’s fees on appeal is discretionary with this Court.” Howard v. Howard, 968 So.2d 961, 980 (¶ 53) (Miss.Ct.App.2007) (citation omitted). We find Williams is entitled to attorney’s fees on appeal in the amount of $6,979.74.
¶ 18.' THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL. THE MOTION OF THE APPEL-LEE/CROSS-APPELLANT REQUESTING ATTORNEY’S FEES ON APPEAL IS GRANTED. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS/CROSS-AP-PELLEES AND ONE-HALF TO THE APPELLEE/CROSS-APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Martin dismissed his second claim, breach of a loan agreement, prior to trial.

. Williams had previously loaned Martin a substantial amount of money in order to pay an existing mortgage on the property. Martin began making payments to Williams in late 2007. Martin was unable to keep these payments current, and Williams ultimately foreclosed on the property in January 2010. Williams bought the property during the foreclosure sale. Martin wanted an opportunity to buy the property back; thus, the formation of the option agreement.